**Veda Elliott NICHOLS [1], Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 47633.**

Court of Criminal Appeals of Texas.

Jan. 16, 1974.

Rehearing Denied Feb. 13, 1974.

1. At the time of arraignment appellant agreed that she was Veda Elliott Nichols and made no suggestion that the name on the indictment should be changed. Later, when testifying, she related that at the time of the offense and at trial she was married to a man named Taylor, who later testified in her behalf, but no changes in the court's records were made as a result of the testimony.

**440**

Dan J. Anderson, Richardson, for appellant.

Henry Wade, Dist. Atty., and John E. Rapier, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder with malice aforethought wherein the punishment was assessed by the jury at fifty (50) years.

The sufficiency of the evidence is not challenged. Suffice it to say the State's evidence reflects that the appellant and Marta Dodson, both prostitutes, went to the deceased's apartment in Dallas on the morning of June 29, 1972, with the intent to rob him, and that while there the appellant shot and killed the deceased James B. Barrett and took his billfold, a set of keys and his gold Cadillac. Apparently overlooked was four hundred dollars ($400) in cash which was found in his right front pocket.

In her first ground of error appellant contends the trial court erred in admitting a pistol into evidence because the same was taken from appellant's apartment as a result of an unreasonable search and seizure following her arrest there after the police had received a tip from the taxi driver who took the appellant and her companion to the apartment complex where the deceased lived.

At the time the pistol was offered into evidence, appellant's counsel expressly stated, "No objection." In absence of an objection nothing is presented for review. Reed v. State, 487 S.W.2d 78 (Tex.Cr. App.1972); Northcutt v. State, 478 S.W.2d 935 (Tex.Cr.App.1972).

Appellant's first contention is overruled.

Next, appellant urges that the trial court erred in excluding from evidence the deceased's arrest record or "rap sheet" from the Sheriff's office records reflecting convictions for aggravated assault and for carrying a prohibited weapon.

Testifying in her own behalf, appellant admitted she had "dated" or "turned a trick" with the deceased the night before and returned the next morning with Marta Dodson to discuss a job in Houston. She denied any intention to rob him. She related she cooked breakfast for the deceased while he showered and dressed. During this time, she hid the deceased's pistol, which she stated the deceased had with him the evening before and which made her uneasy. She had only met the deceased the night before, but had heard he had beaten another girl. She testified that when she and Marta started to leave, the deceased locked the door and declared that no one was leaving until his pistol had been found. He made Marta Dodson open her purse. Knowing that the deceased would search her purse, the appellant related she opened her purse, produced her pistol, pointed to the serial number to demonstrate that the pistol was not his, but requested the deceased to not "touch it." According to appellant the deceased then "backhanded" her, knocking her against the wall. She then shot the deceased, and when he advanced on her again, she related she shot him again.

Appellant then called Deputy Sheriff Kitching out of the presence of the jury in order to obtain the admission of the "rap sheet" in question. Kitching testified the identification bureau of the Dallas County Sheriff's office was under his supervision and he had the care, custody and control

of the records therein and he had the "rap sheet of one Mr. Jimmy Bret Barrett . . . ." which was kept in the normal course of business of the Sheriff's office.

The "rap sheet" bearing the names of "Jimmy Brett Barrett" and "Jimmy Bert Barrett" reflects a number of arrests for various offenses and included the following convictions:

| Arrest Date | Charge | Disposition |
| --- | --- | --- |
| " 7–12–67 | Carrying Prohibited Weapon (Pistol) #CCr66–3050–C | Paid $100.00 Fine |
| " 7–19–67 | Carrying Prohibited Weapon (Pistol) #CCr66–1602 | Paid $558.00 Fine/Cost |
| "11– 7–67 | Aggravated Assault With A Deadly Weapon #CCr67–1267–B | Paid $250.00 Fine; $45.00 Cost |
| "11– 7–67 | Carrying Prohibited Weapon #CCr67–1266–B | Paid $250.00 Fine & $121.05 Cost" |

When the State objected to the offer of the exhibit on the grounds that no proper predicate had been laid and that it was rank hearsay, appellant's counsel stated he only intended to offer the convictions before the jury and to show the deceased's propensity for violence and to lend credence to her claim of self-defense and who started the altercation.

The record then reflects the following:

"THE COURT: All right. You are offering it to show the reasonableness of the Defendant's claim of the apprehension of danger?

"MR. CAMPBELL (defense counsel): Yes, Your Honor, only as to those which resulted in convictions."

The court then sustained the State's objection.

In Dempsey v. State, 159 Tex.Cr.R. 602, 266 S.W.2d 875 (1954), this court stated:

"The defense may offer testimony as to any specific act of violence or misconduct which evidences the violent character of the deceased under the following conditions:

"If offered for the purpose of showing the reasonableness of defendant's claim of apprehension of danger, *it must further appear that the acts of violence or misconduct were known to the defendant at the time of the homicide.*

"But if offered for the purpose of showing that the deceased was in fact the aggressor (not that the defendant thought the deceased was making or about to make an attack) *the witness must know* but it need not be shown that appellant had knowledge of the acts of violence of the deceased at the time of the homicide.

"Before any evidence of deceased's character for violence becomes admissible, however, there must be evidence of some act of aggression by the deceased which the character tends to explain (such as drawing a gun or reaching for a pocket where one is usually carried)." (emphasis supplied)

See also Lewis v. State, 463 S.W.2d 186 (Tex.Cr.App.1971), cf. Mahaffey v. State, 471 S.W.2d 801 (Tex.Cr.App.1971).

■ If it was offered for the purpose counsel stated to the court, we observe that there is no showing that the appellant knew of the same which would render the same inadmissible.

■ If the offer was for the purpose of showing who the aggressor was, then there must be a showing that the witness Kitching had personal knowledge of such convictions. There was not such showing.

■ There is another reason why the exhibit was inadmissible. There was no showing by any evidence that the "rap sheet" of one "Jimmy Brett Barrett" or "Jimmy Bert Barrett" was that of the same person as "James B. Barrett" named in the indictment.

The court did not err in refusing to admit the exhibits.

The judgment is affirmed.