Clint L. LOWE, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 59722.

Court of Criminal Appeals of Texas,
Panel No. Two.

March 11, 1981.

Louis Dayne Miller, Graham, on appeal only, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for the offense of murder. The punishment is imprisonment for five years.

The appellant in his first ground of error contends that the trial court erred in excluding a portion of testimony of the deceased's stepson. The testimony dealt with activities and statements made by the deceased on the day of his death. The State in its brief admits that if the merits of the appellant's ground of error are to be reached, the ground of error has merit and should be sustained. We agree with the State's analysis of the merits of the appellant's complaint. In order to properly understand his complaint and our disposition of the case, it is necessary that the facts of the case be reviewed.

The prosecution presented only one witness, Officer Freeman. He testified that he met the appellant at the police station on the night of the shooting. The appellant told him that he had shot Jimmy Orrell, the deceased. The appellant gave the officer the shotgun the appellant had used and told him that the deceased had pulled a knife on him. The officer then went to the scene of the shooting. The officer asked Orrell's wife if the deceased had a knife and she stated that he did not. The officer was unable to find a knife.

The State also introduced an autopsy report which stated that Orrell's death was caused by a shotgun wound. The autopsy report also revealed that the deceased was intoxicated at the time of his death and probably had a history of excessive alcoholic consumption. The State rested after the report was admitted in evidence.

The appellant's first witness was Jerry Woolridge. He testified that he was with the appellant on the evening of the shooting. He stated that they had returned from work and found the deceased's pickup blocking the driveway leading to the appellant's trailerhouse. The pair left the area and went to another person's home. The appellant borrowed a shotgun and pur-

chased some shotgun shells. A third person went with Woolridge and the appellant; the appellant was sitting in the back seat of the automobile. The three men then returned to the appellant's home and found the pickup still blocking the driveway. They left but later saw the deceased and his wife traveling in another vehicle toward their home. The three men followed the deceased. Both automobiles stopped near the pickup. The deceased got out of his vehicle and approached the other automobile; he appeared to be staggering. The appellant told Woolridge to ask the deceased to move his pickup but not to start any trouble because Orrell might be drunk. Apparently the deceased could not see the appellant in the back seat. Woolridge stated that he asked Orrell to move the pickup so he could visit the appellant. Orrell refused to move it. Woolridge repeatedly asked Orrell to move the pickup but Orrell, each time, refused and cursed. Woolridge stated that Orrell then pulled a knife and slashed at Woolridge's arm. Orrell said he wanted to see the appellant and that he was "going to cut his guts out." Orrell then reached inside the car with the knife, trying to cut Woolridge. The appellant fired the gun and the deceased staggered away and fell. The three men immediately drove to the police station.

Mrs. Jimmy Orrell, the wife of the deceased, testified that she was with the deceased when he was killed. She stated that the appellant had been drinking that day. She also stated that she had found an open knife near the deceased after the shooting. She testified that she could not remember what she told Officer Freeman that night and that she had testified falsely at an inquest when she stated that the deceased did not have a knife. Mrs. Orrell further said that there had been difficulties between the appellant and her husband in the past.

Ocie Lee Vaught testified that he visited the appellant about a week before the shooting. As he was about to leave, he saw Orrell. Orrell yelled something at the appellant. He then heard three or four gunshots. The appellant then went and talked to Orrell for a few minutes and Vaught left.

The appellant testified that he had known the deceased for about fifteen years. He stated that there had been many recent confrontations between the appellant and the deceased. More than once, the deceased had a weapon. In one instance, the deceased woke the appellant and stuck a pistol up his nose. The deceased told the appellant to grin because he was about to blow his head off. The appellant's testimony concerning the events leading up to the shooting was the same as Woolridge's testimony.

Wayne Smith was the stepson of the deceased. He testified that he was with the deceased for three to four hours on the day of the shooting. He said that Orrell was intoxicated and drinking heavily that day. The appellant sought to submit in evidence other testimony by Smith, but, after a State objection, the testimony was excluded.

In the excluded testimony, Smith stated that on the day of the shooting, Orrell told him that "he always knew that one of these days he would have to be the one to kill" the appellant. Smith also testified that later that day the deceased got mad and fired two shots from his pistol at the road. Smith stated he did not know what Orrell was upset about. He also said that when Orrell got intoxicated, he often would get mad and "overbearing."

The appellant argues that his testimony should not have been excluded. We agree and reverse.

This Court has repeatedly held that specific acts of violence by the deceased which show his violent character are admissible in a homicide case where there is evidence of some act of aggression by the deceased which gives rise to a claim of self defense or defense of a third person. *Beecham v. State*, 580 S.W.2d 588 (Tex.Cr.App.1979); *Lewis v. State*, 463 S.W.2d 186 (Tex.Cr.App. 1971); *Wood v. State*, 486 S.W.2d 359 (Tex. Cr.App.1972); *Nichols v. State*, 504 S.W.2d 439 (Tex.Cr.App.1974); *Dempsey v. State*, 159 Tex.Cr.R. 602, 266 S.W.2d 875 (1954).

If evidence of the deceased's violent character is offered to show the reasonableness of the defendant's claim of apprehension of danger, it must be shown that the acts of violence were known to the accused at the time of the homicide. If offered to show that the deceased was in fact the aggressor, the witness must know, but the defendant need not have knowledge of the violent acts at the time of the homicide. *Beecham v. State*, supra; *Lewis v. State*, supra.

In the case at bar, the appellant and Woolridge testified that the deceased attacked Woolridge with a knife. This act could be explained by the character of the deceased and the appellant was entitled to show that the deceased was the aggressor. The court's failure to admit this testimony was prejudicial to the appellant and constitutes reversible error. *Lewis v. State*, supra. Cf. *Mahaffey v. State*, 471 S.W.2d 801 (Tex.Cr.App.1971), *cert. denied*, 405 U.S. 1018, 92 S.Ct. 1297, 31 L.Ed.2d 480 (1972).

The judgment is reversed and the cause remanded.