**Carol Jean HARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00086–CR.**

Court of Appeals of Texas, Dallas.

Nov. 6, 1986.

Deborah E. Farris, Dallas, for appellant.

Jeffrey Keck, Asst. Dist. Atty., Dallas, for appellee.

Before DEVANY, McCLUNG and HOLLINGSWORTH, JJ.

DEVANY, Justice.

Carol Jean Harris appeals her conviction for murder. The case was tried before a jury and punishment was assessed at fifty years' confinement in the Texas Department of Corrections. In her sole point of error, appellant contends that the trial court erred when it refused to admit the prior conviction of the deceased for unlawfully carrying a weapon. We cannot agree with this contention; therefore, we affirm the judgment of the trial court.

Appellant voluntarily surrendered to the Dallas police for the murder of Lavell Kennedy, a man whom she had known for approximately two months and with whom she had lived for about one month. At the police station, she made a voluntary statement to the police that she shot Kennedy with a pistol on Friday, October 5, 1985, because she was afraid of being beaten by him.

At trial, the State and the defense presented conflicting testimony as to whether appellant had previously been physically abused by Lavell Kennedy. Appellant had called the police once before, on October 3, 1985, claiming that the deceased had choked her and beaten her with a chain. Appellant's twin sister supported this testimony, noting that appellant had had circular bruise marks around her neck on October 5, the day of the offense. The sister also testified that appellant told her on that day that she was scared because she had killed someone. When her sister asked appellant why she had done it, appellant told her that she had been choked with a chain and beaten by the deceased and that he was trying to kill her. The officers who had answered appellant's call on October 3, however, testified that they examined her carefully and saw no sign of physical injury. Two neighbors testified that they heard the appellant and the deceased arguing a few days before and each heard appellant threaten to kill the deceased on two different occasions.

Appellant testified that, after the quarrel on October 3, she moved out of their apartment. She returned to the apartment the next day to get her clothes, but the deceased would not give them to her. He also warned her that if she called the police again he would do something to her. Appellant testified that she then went across the street to call the police, but that the deceased began to follow her. Being afraid, she asked a policeman, who was at the store, for help. The deceased then ran around the corner out of sight. Appellant returned to the apartment with the police officer and retrieved her clothes by entering through a window.

On October 5 the deceased came to a bar near the apartment where the appellant was. The deceased asked her if she would take a walk with him in order that they could talk. Appellant testified that she told him "no" at first because she was afraid of him, but she relented after he explained that he "just wanted to talk." Appellant testified that she had a gun in her pocket that she had taken from her aunt's house because she was afraid of the deceased. They walked to their apartment and went in. The deceased shut the door, locked it, and removed the key from the lock. He put the key in his pocket and then went into the bedroom and removed his shirt. Appellant stated that when he returned he sat down on the couch and said, "I thought I asked you not to call the police on me again." Appellant said she responded, "well, you wouldn't leave me alone." The deceased said, "I told you if you called the police on me again I was going to do something to you." He then approached her and she said "Stop," to which he replied "No—I said I was going to get you for that." Appellant testified that she was afraid he was going to strangle her. She stated that she then removed the pistol from her pocket, closed her eyes, and fired. Although the deceased was still

alive when she left the apartment, according to the appellant, she did not call the police or call an ambulance. The deceased was dead by the time he was found by a neighbor.

Appellant claims that the prior conviction of the deceased for unlawfully carrying a weapon is probative of the reasonableness of her apprehension of danger at the time of the offense. She claims this despite the fact that she was not aware of the prior conviction at the time of the offense. We do not agree with this contention. If evidence of the deceased's violent character is offered to show the reasonableness of the defendant's claim of apprehension of danger, under one circumstance, it must be shown that the acts of violence were known to the accused at the time of the homicide. *Lowe v. State*, 612 S.W.2d 579, 581 (Tex.Crim.App.1981). Since the appellant did not know of the prior conviction at the time of the offense, the conviction would not be admissible under this circumstance to show the reasonableness of her belief that she was in danger. *Id.*

However, in *Thompson v. State*, 659 S.W.2d 649 (Tex.Crim.App.1983), we find another circumstance where the prior conviction may be admissible:

> In order to raise selfdefense as an issue, there must be some evidence of aggression on the part of the deceased. Often that evidence ... is ambiguous. Thus, it is the rule that reputation evidence concerning the deceased's violent character or prior specific acts of violence committed by him are admissible in so far as they tend to *explain* the deceased's conduct; because this evidence is probative of "who was in fact the aggressor" in the fray (as opposed to "what the defendant thought"), the defendant need not show his own awareness of it at the time of the offense....

*Thompson*, 659 S.W.2d at 653–54. (Emphasis in original.)

■ Thus, if the conviction were probative to explain the conduct of the deceased, independent of appellant's subjective knowledge of his previous violent behavior, then to objectively determine if in fact he was the aggressor, appellant would not have to know of the conviction at the time of the offense in order for it to be admissible. 659 S.W.2d at 654. However, under *Thompson*, in order for the evidence to be admissible under this circumstance, the defendant has the burden of first developing that the deceased has been guilty of acts of violence. *Id.* Since the appellant wishes to use a prior conviction as evidence of such violent character, we must examine that conviction to determine if it involved an act of violence. In the absence of such a showing by the defendant, the prior conviction will not be admitted. 659 S.W.2d at 655. In the case at hand, the prior conviction did not meet this test because it did not involve any act of violence by the deceased. The evidence of his prior conviction showed only that he had been arrested for unlawfully carrying a pistol while walking down the street. There was no violent act of any kind associated with the conviction. Unlawfully carrying a weapon is not *per se* a violent or aggressive act. 659 S.W.2d at 654. Whether the act of carrying a weapon is violent depends upon the surrounding circumstances. *Id.*

■ Appellant also claims that the conviction should be admissible because the State put the reputation of the deceased as a law-abiding citizen in issue when it asked the defendant whether the deceased had been a "guardian angel." The record is unclear, however, whether the State and appellant were referring to the common meaning of "guardian angel" or to the organization known as "Guardian Angels." Had the State successfully raised the issue of the deceased being a law-abiding citizen, then the appellant would have had the right to rebut this by introducing evidence of the prior conviction. *See Butler v. State*, 131 Tex.Crim. 543, 100 S.W.2d 707, 709–10 (1937); *Murphy v. State*, 149 Tex.Crim. 624, 198 S.W.2d 98, 102 (1946). Since we hold that the State in asking this question did not bring the reputation of the deceased as a law-abiding citizen into issue,

the trial court did not err in denying the introduction of the conviction.

We affirm the judgment of the trial court.