## Louis J. Rogers v. The State.

No. 18317.   Delivered May 20, 1936.
Rehearing Denied June 17, 1936.

The opinion states the case.

*Leonard Brown,* of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder without malice, and his punishment was assessed at confinement in the state penitentiary for a term of five years.

The record shows that the appellant was an automobile mechanic and owned and operated a repair shop in the city of San Antonio. Sometime prior to the alleged homicide deceased

had taken his car to appellant's repair shop for repairs. Before the car was completely repaired the deceased asked permission to take the car and go to the Fair Grounds without paying for the repairs, but promised to return the car in order that the appellant might complete the job. On the morning of the alleged homicide deceased came to the defendant and told him that the car was broken to pieces. The defendant then went with deceased to the place where the car was and the deceased claimed that the motor had been taken out and a crank shaft had been put in. Appellant told deceased that he saw no broken pieces and could not understand how a crank shaft could be put in without taking the car down. Appellant failed to collect any money from the deceased and told the deceased that he had been informed that he, deceased, was the kind of a man who did not want to pay his debts; that he wanted nothing further to do with him. The deceased then unbuttoned his shirt, pulled it to the side and said, "You can accommodate me with trouble," showing the appellant a pistol which he carried concealed in the bosom of his shirt. Appellant returned to his home, got his rifle, secured the services of a friend with a car whom he requested to take him to the place where he had left the deceased. When they arrived there he saw the deceased sitting on the sidewalk behind a small tree. Appellant got out of the car in the middle of the street with his Winchester and when deceased saw him, he jumped up and ran toward Ellison who was sitting on his front porch. Whereupon appellant said to him, "There is no use to run from me now, because I am going to get you now." Deceased then turned and started to run towards Ellison's car, which was standing near the house, when the appellant shot him.

Appellant testified in his own behalf to substantially the same facts as above outlined and in addition thereto that he had been informed that deceased was a high-tempered and dangerous man; that he knew deceased carried a pistol as he saw it on his person only a very few minutes prior to the killing; that when the deceased was running towards the automobile he was drawing the pistol from the bosom of his shirt; that he, appellant, believed that deceased was going to get behind the car to use it as a shield and shoot him while he was in the open street without any protection whatever; that his act in shooting the deceased was in self-defense.

Appellant's first complaint is that the court erred in overruling his motion for a continuance based upon the absence of Bennie Roberts, by whom he expected to prove that on the

morning of the homicide the witness was working for the deceased; that deceased told the witness that appellant had worked on his, deceased's, car and was trying to collect the money, and if the defendant came after the money, he was going to kill him; and further that the reputation of deceased was that of a violent and dangerous man. The court qualified said bill of exception and in his qualification states that on the 30th day of September, 1935, appellant made an application for subpoena to be issued for one Bennie Williams; that said subpoena was returned by the sheriff of Dallas County, October 9, 1935, with the return thereon "Unable to locate"; that this case had been regularly set for trial for the 7th day of October, 1935, and when called on said date the attorney for the defendant informed the court that he had caused a subpoena to be issued for Bennie Williams, but had been informed subsequently that the party actually desired as a witness was named Bennie Roberts; that it was then agreed to pass the case until a subsequent date which would be satisfactory to the appellant; that the date agreed upon for the trial of this case was October 28, 1935; that thereafter no application for process was applied for until the 18th day of October, 1935, which was returned on the 23rd day of October, 1935, with the return thereon "Unable to locate at Fair Park." It occurs to us that the court was justified in overruling the application for continuance on the ground of want of diligence on the part of the appellant to secure the attendance of said witness. It seems that from the 23rd day of October to the day of the trial appellant made no effort whatever to locate the witness and secure his attendance. See Wilson v. State, 87 Texas Crim. Rep., 625; Bedford v. State, 91 Texas Crim. Rep., 285.

By bill of exception number two the appellant objected to the court's charge on the ground that the court failed to include in the said charge the theory of self-defense and that it authorized the jury to find defendant guilty regardless of whether he acted in self-defense. An inspection of the court's charge leads us to the conclusion that the same is not subject to the criticism addressed to it.

By bill of exception number three the appellant objected to the court's charge on the ground that it did not affirmatively present to the jury murder without malice. The court's instructions read as follows:

"But, if from the evidence you believe beyond a reasonable doubt that the defendant, Louis J. Rogers on or about the 23rd of July, 1935, in the County of Bexar and State of Texas,

without malice, as hereinbefore defined, did voluntarily kill the said Ed White by then and there shooting him the said Ed White with a rifle as alleged in the indictment, you will find the defendant guilty of murder and assess his punishment at confinement in the penitentiary for not less than two nor more than five years."

"You are further charged that even though you should find the defendant guilty of murder, yet, unless you find from all the facts and circumstances in evidence in this case, beyond a reasonable doubt that the defendant in killing the deceased, if he did, was prompted and acted with his malice aforethought, as the same is hereinbefore defined, then you cannot assess his punishment at a longer period than five years. If you have a reasonable doubt that the defendant was prompted by and acted with malice aforethought, you must give the benefit of such doubt to the defendant and fix his punishment at some term of years in the penitentiary not less than two nor more than five."

It is true the court did not instruct the jury what facts would reduce the offense of murder with malice to murder without malice, but inasmuch as the jury found him guilty of murder without malice he has not been injured.

Bills of exception numbers four and five will be considered together because they relate to the same subject matter. By bill of exception number four appellant objected to the court's charge on self-defense on the ground that the court failed to submit the law of self-defense as viewed from the standpoint of the defendant only, but submitted the law of self-defense from the standpoint of the jury and compelled the jury to find certain facts existed before they would be allowed to apply the law of self-defense. By bill of exception number five appellant objected to the court's charge on the ground that the court's charge is too restrictive and limits the appellant's right of self-defense to the acts of deceased in arising with his gun in hand and making a demonstration, which caused defendant to have a reasonable apprehension of death or great bodily harm; and that it does not charge the jury that if the defendant knew that the deceased had a pistol and thought that deceased was seeking to obtain cover from which to fire at the defendant, as viewed from his standpoint, he would have the right of self-defense. The court instructed the jury that,

"A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be

actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time," etc. .

The court also instructed the jury:

"If from the evidence you believe the defendant killed the said Ed White, but further believe that at the time of so doing the deceased had made, was making or was preparing to make an attack on him, or you have a reasonable doubt thereof, which, from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, as viewed from the defendant's standpoint at the time, and that acting under such reasonable expectation or fear, the defendant killed the deceased, or you have a reasonable doubt thereof, then you should acquit him; and if the deceased was armed with a pistol at the time he was killed and had made, was making, or was preparing to make such attack on defendant, then the law presumes the deceased intended to murder or to inflict serious bodily injury upon the defendant."

The court further instructed the jury:

"If you believe from the evidence, or have a reasonable doubt thereof, that the defendant, . . . as he approached the deceased, Ed White, the deceased arose with a gun in his hand and made a demonstration which from the mode and manner of it, viewed from the defendant's standpoint alone at the time, caused the defendant to have a reasonable apprehension of death or great bodily harm, then the defendant would have the right to use all necessary force to protect his life and person, and it is not necessary that there should then have been actual danger, provided the defendant acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time. You are further charged that if you believe from the evidence, or have a reasonable doubt thereof, that after such demonstration, if any, on the part of the deceased, said deceased sought cover from which he might fire at the defendant . . . or if it reasonably so appeared to the defendant as viewed from his standpoint at the time then the defendant would have the right to use all necessary force to protect his life and person . . . even to the extent of taking the life of his assailant; and if you so believe or have a reasonable doubt thereof, you will acquit the defendant."

It occurs to us that the court's charge adequately presented every defensive theory that was raised by the testimony and

fully protected the appellant in his legal rights. Hence we overrule the appellant's contention.

By bill of exception number six appellant objected to the court's charge on the ground that it instructed the jury that the defendant would have the right to use all necessary force to protect his life and person when the issue of force was not in the case and because the undisputed testimony showed that at the time of the homicide the deceased was armed with a deadly weapon. The question of necessary force did not arise. We do not believe that there is any merit in the appellant's contention. The court's charge must be considered as a whole and be given a reasonable interpretation and not an unreasonable one. The court did instruct the jury that the defendant had a right to use all necessary force to protect his life and person, even to the extent of taking the life of his assailant, which means that he had a right to resort to all the means necessary to protect his life and person. It could hardly mean anything else because all necessary force would include all necessary means. Hence we overrule his contention.

Bill of exception number seven discloses the same objections to the court's charge that were made in bill of exception number four and is overruled for the same reasons.

By bill of exception number eight the appellant objected to the court's charge on the following ground: that it restricted or limited the appellant's right of self-defense to a previous assault upon him by the deceased and a former demonstration, and did not instruct the jury that if the defendant knew the deceased had a pistol and thought that he was seeking cover from which to shoot, that he, the defendant, would have the right to shoot and kill the deceased. We have again reviewed the court's entire charge and do not believe that it is subject to the criticism addressed to it.

By bill of exception number nine appellant urged a number of objections to the court's charge which we have carefully considered and after careful consideration, we have reached the conclusion that the same are without merit.

The appellant in his brief cites us to a number of authorities including the case of Andrus v. State, 165 S. W., 189, wherein this court held that it was error for the trial court to instruct on actual or real danger when the evidence raised only the issue of apparent danger; but in this case, if the issue of self-defense was raised, it raised the issue of actual danger as well as apparent danger. The facts in this case are such that

it is readily distinguishable from the case of Andrus v. State, supra.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant makes a lengthy motion for rehearing, repeating and going over the same grounds of objections to the verdict and judgment, and procedure in the trial court, as heretofore made. In our opinion the trial court was liberal toward appellant in his charge on self-defense. If we understand this record, appellant himself testified that after having had an argument with deceased over the payment of a debt asserted to be due him by deceased, during which argument he ascertained that deceased had a pistol, appellant went away, armed himself with a gun and voluntarily came back to where deceased was, and when the latter got up and started to run appellant called out to him that he need not run, that he was going to get him, and shot him down. We see no reason for discussing further the matters complained of, all of which were gone into and discussed in our original opinion.

The motion for rehearing is overruled.

*Overruled.*